**Gayle Lea GRINSELL, et al., Plaintiffs,**

v.

**KIDDER, PEABODY, & CO., INC., et al., Defendants.**

**No. C–90–1576 FMS.**

United States District Court, N.D. California.

Aug. 31, 1990.

Edward A. Koplowitz, MacInnis, Donner & Koplowitz, San Francisco, Cal., for plaintiffs.

Eric G. Wallis, Boyd C. Sleeth, Crosby, Heafey, Roach & May, Oakland, Cal., for defendants.

## ORDER

FERN M. SMITH, District Judge.

Plaintiffs, Mr. and Ms. Grinsell, filed this securities fraud action against their investment broker, Laura Kent, and her employer, Kidder, Peabody, & Company. The complaint alleges eleven causes of action, including violation of §§ 17(a) and 12(2) of the Securities Act of 1933. Defendants move to (1) strike allegations regarding violation of § 17(a) from the tenth cause of action and (2) dismiss the eleventh cause of action, alleging violation of § 12(2), for failure to state a claim. Having carefully considered the submitted materials and heard argument on these motions, the Court grants the motions for the reasons set forth.

### Motion to Strike Portions of the Tenth Cause of Action

■ Plaintiffs' tenth cause of action, entitled "Damages—Violation of Federal Securities Law," asserts that defendants violated § 17(a) of the Securities Act of 1933 and § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934.[1] Defendants move to strike all references to § 17(a) from the complaint on the grounds that no private cause of action exists under that statute.

Ninth Circuit precedent on this issue is clear. In 1987, a Ninth Circuit *en banc* panel reversed two earlier rulings and held that no private remedy exists for violations of § 17(a) of the Securities Act of 1933. *See In re Washington Public Power Supply System Securities Litigation*, 823 F.2d 1349 (9th Cir.1987).

Rule 12 of the Federal Rules of Civil Procedure allows courts to order stricken from any pleading any "redundant, immaterial, impertinent, or scandalous matter." Because allegations concerning violation of § 17(a) are immaterial and impertinent, the motion to strike is GRANTED.

### Motion to Dismiss the Eleventh Cause of Action

■ This motion presents a clear question of law: Does § 12(2) of the Securities Act of 1933 apply only to initial offerings of stock, or does it also protect those who purchase stock on the secondary market?[2] There is a split of opinion on this issue, but no Ninth Circuit or Northern District of California cases on point.

Section 12(2) of the 1933 Act provides as follows:

Any person who ...

(2) Offers or sells a security ... by the use of any means or instruments of

---

**1.** Section 17(a), codified at 15 U.S.C. § 77q(a), like Rule 10b–5, makes it unlawful to use instruments of interstate commerce for the purpose of committing securities fraud.

**2.** It is undisputed that the acts complained of here are unrelated to an initial stock offering.

transportation or communication in interstate commerce or of the mails, *by means of a prospectus or oral communication,* which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading ... and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him....

15 U.S.C. § 77*l* (2) (emphasis added).

Both sets of parties base their arguments on the meaning of the phrase "by means of a prospectus or oral communication." Defendants argue that, in light of the 1933 Act's legislative history, the words "prospectus or oral communication" clearly limit application of § 12(2) to communications connected with an initial stock offering, and exclude statements made pursuant to subsequent secondary market transactions. Plaintiffs, relying on the same statutory language, argue that all oral communications of the type proscribed by the statute are actionable, whether or not made in conjunction with an initial stock offering.

Plaintiffs rely primarily on a recent New Jersey District Court case. The defendants in *Elysian Federal Savings Bank v. First Interregional Equity Corp.,* 713 F.Supp. 737 (D.N.J.1989), like defendants here, argued that the Securities Act of 1933 explicitly addressed itself only to initial offerings of stock and that, in light of that intent, the words "oral communication" in § 12(2) must refer to oral statements made pursuant to an initial stock offering. The *Elysian* court disagreed, noting that another portion of the 1933 Act, § 17(a) (discussed in the previous section of this Order), does apply in the secondary market context. The *Elysian* court pointed out that the key distinction between

§ 12(2) of the 1933 Act and § 17(a) of the same act is inclusion of the word "prospectus" in § 12(2):

Inclusion of the word prospectus appears to refer to new public offerings. The question here concerns the meaning of the words "or oral communication." If ... this reference were more closely linked to the word prospectus (as in "or *related* communication") defendants' argument would be more compelling. If Congress intended to so narrowly limit the application of section 12(2), more narrow words were available to do so.

*Id.* at 750, n. 17.[3]

Plaintiffs in this action, along with the *Elysian* court, are correct in noting that the United States Supreme Court held § 17(a) of the 1933 Act applicable to secondary market transfers. The Court carefully pointed out, however, that "the 1933 Act was primarily concerned with the regulation of new offerings, ... § 17(a) was meant as a major departure from that limitation." *U.S. v. Naftalin,* 441 U.S. 768, 777–78, 99 S.Ct. 2077, 2084, 60 L.Ed.2d 624 (1979).

In determining that § 17(a) applied to secondary stock transfers as well as to initial offerings, the Supreme Court relied on both the statutory language and the accompanying Senate Report, which stated: "The act subjects the sale of old or outstanding securities to the same criminal penalties and injunctive authority for fraud, deception, or misrepresentation as in the case of new issues...." S.Rep.No. 47, 73rd Cong., 1st Sess., 4 (1933). The Senate Report said nothing about expanding the Act to private actions arising from the negligence standard of § 12(2).

Defendants in the instant case point to a number of district court cases which, unlike *Elysian,* concluded that § 12(2) applies only to communications connected with initial public stock offerings. *See, e.g., First Union Brokerage v. Milos,* 717 F.Supp.

---

**3.** Many district courts have agreed with the conclusion reached in *Elysian,* although defendants accurately point out that many of those courts are in the Third Circuit. A case addressing the applicability of § 12(2) in the secondary market context is currently before the Third Circuit Court of Appeals.

1519 (S.D.Fla.1989). In *Mix v. E.F. Hutton & Co.*, 720 F.Supp. 8, 11 (D.D.C.1989), the Court, finding the phrase "prospectus or oral communication" ambiguous, turned to the Act's legislative history and concluded as follows:

> Along with the majority of federal district courts to consider the issue, this Court finds the legislative history of the 1933 Act relatively clear on this point. The key house committee report states generally that the Act was designed to "affect[ ] only new offerings of securities ... [and] does not affect the ordinary redistribution of securities unless such redistribution takes on the characteristics of a new offering...." (Citation omitted.)

*See also SSH Company, Ltd. v. Shearson, Lehman Brothers Inc.*, 678 F.Supp. 1055, 1059 (S.D.N.Y.1987) ("The purpose of the '33 Act was the regulation of the *distribution* of securities. Post-distribution trading is regulated by the '34 Act.")[4]

A further argument, not raised by the parties, counsels against adopting plaintiffs' reading of § 12(2). Plaintiffs rely on the statutory language referring to a "prospectus or oral communication" and argue that certain oral communications made at the time of secondary transfer are actionable under § 12(2). In other words, plaintiffs would interpret § 12(2) to include all oral communications made in the secondary market context, while excluding all *written* communications made in the same context. This Court can find no logical reason in policy or equity for assuming such an odd departure from the Act's focus on new offerings.

In light of Congress' clear intent to focus the 1933 Act primarily on initial offerings, and given the clarity with which a departure from that focus was indicated in relation to § 17(a), the only rational way to interpret the reference to "oral communications" in § 12(2) is as relating back to "prospectus," not as opening up application

of the statute to an absurdly narrow category of statements.

For all the reasons discussed above, the Court concludes that defendants' acts are not actionable under § 12(2) of the Securities Act of 1933; defendants' motion to dismiss the eleventh cause of action, therefore, is GRANTED.

SO ORDERED.

---

**4.** Defendants argue that the *Elysian* court mistakenly relied on Third Circuit precedent which virtually ignores the differences between the legislative intent underlying the 1933 Act and the intent behind the 1934 Act.